

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

WAGGONER CARR
ATTORNEY GENERAL

March 29, 1963

Mr. William A. Harrison
Commissioner of Insurance
State Board of Insurance
Austin, Texas

Opinion No. C-45

Re: (1) Whether TIAA is transacting
any insurance business in this
State in violation of Art. 3.57 of
the Texas Insurance Code.
(2) Whether colleges, universi-
ties or members of their staffs
in administering the TIAA pro-
gram, act as agents for the
company.

Dear Mr. Harrison:

Your letter requesting our opinion as to the above questions,
together with the attached exhibits, reflects the following relevant
facts:

Teachers Insurance and Annuity Association of America, a foreign
life insurance company, does not have and has never had a Certificate of
Authority to transact business in this State. The company employs no
paid agents, pays no commission in connection with the solicitation of
insurance and maintains no branch offices or paid company representa-
tives in this state. The company's principal business is the issuance
of life insurance policies and annuity contracts to members of the teach-
ing profession. Annuity contracts have been issued to citizens of this
state in connection with college retirement programs adopted by resolu-
tion of the trustees or governing body of the interested college or univer-
sity. The initial negotiations concerning adoption of the plan are con-
ducted by an officer of the company and the officials of the institution
located in Texas through the use of the mails, by long distance calls, and
in some instances, by conferences in New York.

Under the terms of the retirement resolution, the plan is established
by the college for the faculty and administrative staff. The resolution de-
fines such things as eligibility to participate, amount of contribution, and

-197-

mandatory retirement age. The college agrees to deduct a portion of the required premium from the salary of the participant, usually on a monthly basis, add an additional amount, and remit the total to the company as a premium for the contract. The individual contract is between the participant and the issuing company and such contracts are the property of the individual participant.

The college administers the plan and receives detailed instructions from the company as to methods to be used. When a teacher becomes eligible to participate, an employee of the college explains the plan through the use of booklets, bulletins, and correspondence received from the company. Applications furnished by the company are completed, in accordance with company instructions, by the teacher, usually assisted by some employee of the college. The application is forwarded to the company by the college and is accepted by the company in New York. The company then issues the annuity contract and mails it to the individual participant in Texas.

Premiums are thereafter deducted from the participant's salary and remitted to the company by the college in the manner required by the company in accordance with detailed procedures prescribed by it. These procedures cover such contingencies as termination of employment by death, retirement, or otherwise, addition of new participants, allocation of premiums, and additional contributions.

The following is an excerpt from your letter:

"Since the negotiations leading up to the issuance of the annuity contracts are conducted with the college or university and not directly with the persons who ultimately purchase such annuity contracts, I request your official opinion, based upon the above enumerated facts, as to whether or not Teachers Insurance and Annuity Association of America is transacting any insurance business in this State in violation of Article 3.57 of the Texas Insurance Code.

I request your further opinion as to whether or not the college or university or members of its staff, in administering such program, would be acting as an agent for

Teachers Insurance and Annuity Association of America if they receive and transmit to members of the faculty or staff any advertising material or applications for annuity contracts, or receive or transmit any annuity contracts, or collect annuity premium payments from faculty or staff members (directly or by payroll deduction) and transmit such annuity premium payments to the insurance company. "

We will consider your second question first.

Article 21.02, Texas Insurance Code, provides in part as follows:

"Any person who solicits insurance on behalf of any insurance company. . .or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same. . .or who shall. . .receive, or collect, or transmit any premiums of insurance. . .or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself. . . whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person shall be held to be the agent of the company for which the act is done. . ." (Emphasis supplied).

The employees of the colleges and universities explain the retirement plan and the salient features of the annuity contract to the teacher through the use of booklets and brochures furnished by the company. This is no less than any insurance agent does in the daily course of his work in the solicitation of business. Such explanation is the medium by which the company and participant are brought together and is the method prescribed by the company for the conduct of its business. The colleges and universities give notice that they will receive applications for insurance on behalf of the company and that they will transmit the applications to the company. They are given detailed instructions as to the method of completing and transmitting the application. The applications are received and transmitted by the employees of the institution. The institution unquestionably collects premiums and transmits

the premiums so collected in accordance with detailed instructions received from the company. The institution is required by the company, in the retirement resolution, to perform this function. The Legislature, in Article 21.02, supra, has provided that if any person shall perform any of the specified acts in this state, other than for himself, such person shall as a matter of law be the agent of the company for which the act is performed. The statute expressly provides that it makes no difference whether the acts are done at the instance and request of the insurance company or some other person. The only exception is when a person performs the act for himself. The college or employee who admittedly performs these acts cannot be performing them for themselves. They are not parties to the contract which is made exclusively between the insurance company and the individual participant. Therefore, the admitted acts are within the terms of Art. 21.02, which as a matter of law creates the relationship of principal and agent between the insurance company and the person performing the statutory acts of agency.

It has been suggested that the principles announced by the United States Supreme Court in Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196 (1937) are controlling in regard to your second question. That case involved a group policy, a contract between the insurance company and the employer for the benefit of the employees. As a party to the contract, the employer acted in his own behalf or for his employees. Under the facts of the Boseman case, the employer was a foreign corporation domiciled in Pennsylvania and no act in regard to the negotiation, application, or delivery of the policy or payment of premium was done in Texas. In our opinion Article 21.02, Texas Insurance Code, is controlling.

Your second question is answered in the affirmative.

In regard to your first question, Article 3.57, Texas Insurance Code, reads as follows:

"No foreign or domestic insurance company shall transact any insurance business in this State, other than the lending of money, unless it shall first procure from the Board of Insurance Commissioners a certificate of authority, stating that the laws of this State have been fully complied with by it, and authorizing it to do business in this State."

Your inquiry is limited by this Article to the single issue of whether or not the company is transacting an insurance business in this state. The authorities are in almost unanimous agreement that negotiations of the character conducted by the company and the institutions by mail, telephone and conferences in New York concerning the adoption of the Retirement Plan by the institution would not constitute the transaction of any insurance business in this state, as the purpose of those negotiations is to secure adoption of the plan by the institution and to apprise the institution of its duties and responsibilities under the plan. Such negotiations do not culminate in the sale of insurance to the college or university as such.

The courts of the various states have had great difficulty in defining the exact degree of activity necessary for an insurance company to be transacting business within a given state. Many of the opinions are conflicting. We need not, however, review and explain those authorities in regard to your inquiry in view of Article 21.03, Texas Insurance Code, which reads in part as follows:

> "Whenever any person shall do or perform within this State any of the acts mentioned in the preceding article for or on behalf of any insurance company therein referred to, such company shall be held to be doing business in this State. . ."

The phrase "any of the acts mentioned in the preceding article" refers to acts enumerated in Article 21.02, Texas Insurance Code, a portion of which is quoted above. When the college or its employees perform the acts listed in Article 21.02 they act for the insurance company by the terms of that statute. Article 21.03 provides that when such acts are so performed the company shall be held to be doing business in this state.

The question arises as to whether such statutory provisions by the state are valid in view of decisions by the Supreme Court of the United States.

That court in Travelers Health Ass'n. v. Commonwealth of Virginia, 339 U.S. 643, 647-648, 70 S. Ct. 927, 929, said:

"In Osborn v. Ozlin, 310 U.S. 53, 62, 60 S.C. 758, 761, 84 L. Ed. 1074, we recognized that a state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the 'State action' may have repercussions beyond state lines. . ."

As part of a comprehensive regulatory act governing domestic and foreign insurance companies, the Legislature, by Article 21.03 of the Texas Insurance Code, has sought to prevent foreign insurance companies who have not qualified to do business in this state from achieving their purpose through agents who act in their behalf. The interest of the state and its right to protect that interest is clearly recognized in the Osborn case.

In a related problem, the Texas Supreme Court in State v. State Mutual Life Assurance Company of America, ___ Tex. ___, 353 S. W. 2d 412, 416 (1962), said:

"The Supreme Court of the United States has consistently recognized the right of the states to regulate the insurance industry in its operations affecting the public welfare, both before and since passage of the McCarran Act, 15 U.S.C.A. §§ 1011-1015."

Your first question is answered in the affirmative. Under the submitted facts and applicable statutes it is our opinion that Teachers Insurance Association of America is transacting insurance business in this state in violation of Article 3.57, Texas Insurance Code.

### SUMMARY

Under the facts stated the employees of colleges and universities act as agents for Teachers Insurance Annuity Association of America when they perform the acts enumerated in Article 21.02, Texas Insurance Code. Teachers Insurance Annuity Association of America is transacting insurance business in this state in violation of Article 3.57, Texas Insurance Code.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By Joe R. Long

Joe R. Long
Assistant Attorney General

JRL:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Dudley D. McCalla
Joseph Bracewell
Jerry Brock

APPROVED FOR THE ATTORNEY GENERAL
BY:

Stanton Stone